IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff/Appellee,*<br><br>v.<br><br>DYLANN STORM ROOF,<br><br>*Defendant/Appellant.* | Case No. 17-3 |

**MOTION TO SUSPEND BRIEFING SCHEDULE**

Defendant-Appellant Dylann Storm Roof, by and through undersigned counsel, hereby moves this Court pursuant to Federal Rule of Appellate Procedure 27 for an order suspending the briefing schedule currently set in this case for a period of ninety days, to allow counsel to complete collection of the trial record.

In support thereof, counsel for Mr. Roof states the following:

1.      This is a direct appeal from a judgment of the United States District Court for the District of South Carolina convicting Mr. Roof of thirty-three felony counts related to the murder and attempted murder of parishioners at the Emanuel African Methodist Episcopal Church in Charleston, and sentencing him to death. The district court entered judgment on January 23, 2017, and denied Mr. Roof's timely motion for a new trial or judgment of acquittal on May 10, 2017.

1

2.     Mr. Roof filed a timely notice of appeal on May 23, 2017. That same day, this Court appointed the Federal Defender Offices for the Central District of California and the District of Maryland to represent Mr. Roof on appeal as death-qualified counsel under 18 U.S.C. § 3599(c) and the Criminal Justice Act. No member of either office had any involvement in the district court proceedings. Undersigned counsel entered their notices of appearance on June 22, 2017.

3.     Immediately upon appointment, counsel began an intensive review of the district court docket, which includes almost 1000 docket entries, many of them sealed. Based on that review, counsel filed a preliminary transcript order on July 11, 2017. Counsel's further and continuing review of the record revealed additional missing transcripts, which counsel ordered on August 8, August 11, September 7, September 8, and October 19.

4.     On October 16, while one previously ordered transcript remained outstanding,[1] and before counsel had ordered all of the necessary transcripts, this Court issued a briefing order, which set the due date for Mr. Roof's opening brief and appendix as November 20, 2017.

5.     As discussed in greater detail below, despite our diligent efforts, appellate counsel still does not possess a complete district court record. We are

---

[1] On August 11, appellate counsel ordered transcription of a November 18, 2016 hearing. The court reporter has not yet filed that transcript.

2

missing a significant number of pleadings and other essential documents, and anticipate that we will need to correct or modify the district court record. We are unable to proceed with the briefing process while important items are missing from the record or unavailable to us.

6. We are asking the Court to suspend the briefing schedule for ninety days, which will allow us to: (1) complete our review of the record we have collected thus far; (2) finish compiling the full record of proceedings in district court; (3) move for correction or modification of the district court record, if necessary; and (4) conduct a thorough assessment of the undertaking necessary to research, draft, and file the opening brief in this case. By the end of the ninety-day period, and in consultation with government counsel, we respectfully will propose for this Court's consideration a merits briefing schedule more informed and realistic than any we could suggest at this juncture. In the meantime, we propose that we provide status reports every thirty days on our ongoing efforts to accomplish these tasks.

7. We believe that thorough record collection at this stage will prevent unnecessary delays once the briefing schedule is set.

8. Since our appointment less than six months ago, we have been working diligently to identify, obtain, and review the district court record and trial counsel's files. To that end:

a.  We conducted a preliminary review of the extensive docket, which includes more than four dozen sealed pleadings that are inaccessible on PACER and approximately 170 docket entries that are missing from the PACER docket entirely. We then sought and obtained from the district court the nonpublic docket sheet to assist us in determining the nature of these unavailable documents, and compared that information to documents in the trial files. Through this painstaking process, and with the assistance of the district court, we identified a majority of these pleadings.

b.  We conducted a cursory review of the existing transcripts, which run more than 5000 pages; identified several additional hearings that had yet to be transcribed; and ordered transcription of those proceedings.

c.  We conducted a preliminary review of the Parties' trial and penalty-phase exhibits (though not yet the pretrial and competency hearing exhibits), and traveled to Columbia, South Carolina to view and document the physical exhibits in person.

d.  We traveled to Charleston, South Carolina on two separate occasions to obtain materials from the district court's chambers file and approximately 700 juror questionnaires.

e.  We collected and commenced the time-consuming process of organizing, indexing, and reviewing the trial team's voluminous files, which

4

consist of approximately thirty-five boxes of paper documents and 350,000 digital files.

    f.    We began compiling the record in *State of South Carolina v. Dylann Storm Roof*, Case Nos. 2015-GS-10-04115 through -04124 and Case Nos. 2015-GS-10-04186 through -04188, state cases arising out of the same events as this federal case.

9.    Although our offices have made collecting the trial record a priority, we also have spent substantial time on other important case-related matters since our appointment. Most notably, we have traveled to Terre Haute, Indiana, where Mr. Roof is serving his sentence, on multiple occasions, to meet with Mr. Roof—who represented himself during part of his trial—and educate him on the appellate process. We also have had regular legal calls with Mr. Roof, to update him on the status of our work and answer his questions. These responsibilities are ongoing.[2]

10.    Despite our diligent efforts, we are missing significant items from the district court record. Specifically:

    a.    We are missing 221 sealed pleadings filed in district court.

    b.    We are missing at least one transcript, which has been ordered.

---

[2] On September 18, Mr. Roof filed a pro se motion to remove and replace appellate counsel, which this Court denied the following day.

    c. We may be missing exhibits presented at trial. We must review the materials recently obtained in Columbia, as well as additional transcripts, to determine precisely how many exhibits remain outstanding. We also must compare the multimedia exhibits presented at trial with those in our possession, to determine whether we have the specific portions played for the jury.

    d. We do not know whether we have a complete and legible set of juror questionnaires, as we obtained a copy from the district court late last week and have not yet been able to review that copy in any detail.

    e. We are missing the jury commissioner and jury composition files, from which the grand and petit jury venires were drawn.

    f. We are missing the Criminal Justice Act billing records.

    g. We are missing most of the record, including some transcripts, in *State of South Carolina v. Dylann Storm Roof*. This formal record, which we understand contains information relevant to Mr. Roof's federal appeal, will be judicially noticeable on appeal. *See* Fed. R. Evid. 201(b)(2).

11. The above list of missing items necessarily is incomplete because we have not finished our review of the parts of the record that we do have. Until we complete our review of the transcripts and pleadings in full, we will not know whether we are missing additional items from the record. We are still very early in

this record review process. As mentioned, the docket runs almost 1000 entries in length. The transcripts span approximately sixty separate hearings and total more than 5000 pages. Based on our experience, we expect to find additional missing documents upon further review of the record. We will seek to obtain any such documents expeditiously.

12. Our nascent review already has revealed at least one item that we believe should be, but is not, part of the district court record. We must complete our review to confirm this belief and determine whether additional documents should be incorporated into the record. We then will move in district court for correction or modification of the record, if necessary, pursuant to Federal Rule of Appellate Procedure 10(e).

13. Our preliminary record review also indicates that many docket entries are not properly sealed or unsealed, per the district court's orders. We must analyze the record further to determine the precise number of incorrectly docketed entries, and file appropriate motions with the district court to correct them.

14. Appellate counsel in capital cases have a special obligation to obtain a complete and accurate record of trial proceedings. Specifically,

> counsel . . . must ensure that there is a complete record respecting all claims that are made, including objections, motions, statements of grounds, questioning of witnesses or venire members, oral and written arguments of both sides, discussions among counsel and the court, evidence proffered and received, rulings of the court, reasons

7

> given by the court for its rulings, and any agreements reached between the parties. . . .
>
> Further, . . . counsel at all stages of the case must determine independently whether the existing official record may incompletely reflect the proceedings . . . .

*A.B.A. Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases* ("*A.B.A. Guidelines*"), Guideline 10.8 cmt. (rev. 2003), *reprinted in* 31 Hofstra L. Rev. 913, 1033 (2003). Congress also requires an appellate court in a federal capital case to "review the entire record in the case," 18 U.S.C. § 3595(b), and the Supreme Court has "emphasized . . . the importance of reviewing capital sentences on a complete record," *Dobbs v Zant*, 506 US 357, 358 (1993) (per curiam).

15. Moreover, because Mr. Roof is sentenced to death, appellate counsel owe an extra duty of care to present all "arguably meritorious" issues "under the standards applicable to high quality capital defense representation," and to "present issues in a manner that will preserve them for subsequent review." *A.B.A. Guidelines*, Guideline 10.15.1(c); *see also id.* cmt. ("'Winnowing' issues in a capital appeal can have fatal consequences. Issues abandoned by counsel in one case, pursued by different counsel in another case and ultimately successful, cannot necessarily be reclaimed later. When a client will be killed if the case is lost, counsel should not let any possible ground for relief go unexplored or unexploited."). Counsel cannot fulfill these obligations without a complete record.

8

16. While this Court is hardly unfamiliar with death penalty cases, the vast majority of those involve habeas challenges to state-court death sentences. As the Court knows, that kind of appeal follows multiple stages of post-trial litigation, including a direct appeal to the state's highest court and collateral litigation in the state trial and appellate courts. A select number of the issues presented at those stages are then litigated in a habeas petition in federal district court, and those issues are narrowed further on habeas appeal to ones for which this Court or the district court grants a certificate of appealability pursuant to 28 U.S.C. § 2253. By contrast, this direct appeal, arising from a capital conviction and death sentence imposed by a federal court, marks Mr. Roof's first and potentially only opportunity for post-trial review of his conviction and death sentence. Thus, as far as determining whether the federal courts will approve his execution, this appeal is the main event. *See Barefoot v. Estelle*, 463 U.S. 880, 887 (1983) (emphasizing that "direct appeal is the primary avenue for review of a conviction or sentence, and death penalty cases are no exception").

17. Presumably for these reasons, the Fourth Circuit has suspended the briefing schedule pending completion of the district court record in six of the last seven federal capital appeals docketed in the Court. *See United States v. Umana*, CA No. 10-6, ECF No. 60; *United States v. Runyon*, CA No. 9-11, ECF No. 45; *United States v. Hager*, CA No. 8-4, ECF No. 29; *United States v. Caro*, CA No.

9

7-5, ECF No. 48; *United States v. Lighty*, CA No. 6-6, ECF No. 54; *United States v. Basham*, CA No. 5-5, ECF No. 82. Sister circuits have issued similar orders in recent cases. *See, e.g.*, *United States v. Tsarnaev*, CA No. 16-6001 (1st Cir.), ECF Nos. 117055937, 117109501, 117137913, 117168727; *United States v. Sanders*, CA No. 15-31114 (5th Cir.), ECF Nos. 513948156, 513999769, 514068139, 514118634, 514184854, 514221118; *United States v. Savage*, CA No. 14-9003 (3d Cir.), ECF No. 3112524518.

18. We believe the requested ninety-day time period will afford sufficient time to complete the projects detailed above.

19. Today, Bonnie I. Robin-Vergeer, counsel for the government, informed appellate counsel that the government takes no position on this motion.

Accordingly, for these reasons, Mr. Roof respectfully requests that this Court suspend the briefing schedule for a period of ninety days, during which time Mr. Roof will provide status reports every thirty days on his progress in compiling and reviewing the record. At the end of the ninety-day period, and in consultation with the government, Mr. Roof expects to propose a realistic briefing schedule for the Court's consideration.

//

//

Respectfully submitted this 16th day of November, 2017.

/s/ Hilary Potashner
HILARY POTASHNER
Federal Public Defender for the
Central District of California

/s/ James Wyda
JAMES WYDA
Federal Public Defender for the
District of Maryland
Office of the Federal Public Defender
100 South Charles Street
Tower II, Suite 1100
Baltimore, MD 21201
(410) 962-3962

*Counsel for Appellant*

# CERTIFICATE OF SERVICE

This is to certify that the foregoing **MOTION TO SUSPEND BRIEFING SCHEDULE** was filed electronically via CM/ECF, which automatically sends notice of such filing to the following registered CM/ECF users:

| | |
|---|---|
| April J. Anderson<br>Thomas Evans Chandler<br>Bonnie Ilene Robin-Vergeer<br>U.S. Department of Justice<br>Civil Rights Division – Appellate Section<br>P.O. Box 14403<br>Ben Franklin Station<br>Washington, DC 20044-4403 | Julius Ness Richardson<br>Assistant United States Attorney<br>Office of the United States Attorney<br>Suite 500<br>1441 Main Street<br>Columbia, SC 29201-2692 |

Vijay Shanker
U.S. Department of Justice
Criminal Division – Appellate Section
Room 1264
950 Pennsylvania Avenue, NW
Washington, DC 20530-0000

on this 16th day of November, 2017.

/s/ James Wyda
JAMES WYDA